THE KINGS COUNTY FIRE INSURANCE COMPANY, Appellant, *v.* HANNAH STEVENS, Respondent.

In a deed which purported to convey seventy-four acres of land lying south of the "Wallabout bridge road," the land was described as "beginning at a point on the southerly side of the Wallabout bridge road, adjoining the land now or lately belonging to John Skillman;" running thence southerly; and, after various courses and distances, "north, forty-eight de-

grees nine minutes west, * * * to the Wallabout bridge road ; " and from thence " along said road * * * to the place of beginning." Plaintiff, who had acquired title under the deed; through various *mesne* conveyances. to a portion of the lands adjoining the said highway, upon a discontinuance thereof, fenced up the same in front of his premises to its center. This fence was torn down by defendant, who also owned a portion of the lands adjoining the highway, and who claimed a right of way. In an action to restrain defendant from entering upon said land, and tearing down the fence, *held*, that the grant did not include the highway to its center ; but the land was bounded by the southerly side of the highway ; and that therefore the action was not maintainable.

(Submitted November 21, 1881 ; decided January 17, 1882.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made December 6, 1880, which affirmed a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term.

This action was brought to restrain defendant from tearing down a fence erected by plaintiff upon land forming part of what was once the southerly half of " the Wallabout bridge road ; " so called in the city of Brooklyn, to which plaintiff claimed title.

The premises of both the plaintiff and defendant front on said Wallabout road, as the same existed in the year 1835 ; at this date the premises formed a part of a tract of land owned by one Garrett Nostrand, and were by him conveyed to Edward Sanford, who is the common source of title as to both parties to the action. The conveyance to Sanford described the premises as follows : " Beginning at a point on the southerly side of the Wallabout bridge road adjoining the land now or lately belonging to John Skillman," etc., etc. : " thence along Henry Boerum's and John Rapelyea's land north, —— minutes east, six hundred and sixty-three feet to land belonging to the heirs of Jacobus Lott ; thence along said land forty-one degrees forty-five minutes west, fifty feet ; thence along said land north, forty-eight degrees and nine minutes west, five hundred and ninety-four feet to the Wallabout bridge road ; thence north, seventy-six degrees and forty-three minutes west, along said road, one thousand two hundred and twenty feet

to the place of beginning; containing seventy-four acres, one rood and twenty-eight perches of land." The farm, after it was conveyed to Sanford, was laid out by him into city lots, including the lots now owned by both plaintiff and defendant; the conveyance under which the plaintiff derives title was prior in point of time to that of defendant. The Wallabout bridge road was discontinued, and plaintiff fenced in front of his lot to the center of said road. Defendant tore down the fence, claiming a right of way.

*N. Cothren* for appellant. The Wallabout bridge road having been lawfully closed before this fence was built, plaintiff's title to the center of the road then became complete. (*Heath* v. *Barmore*, 50 N. Y. 302, 306; *Mahon* v. *N. Y. C. R. R. Co.*, 24 id. 658; 25 id. 526; *Hooker* v. *Utica Turnpike Co.*, 12 Wend. 371; Laws 1806, chap. 20, § 1.) The idea of an intention in the grantor to withhold his interest in a road to the middle of it, after parting with all his right and title to the adjoining land, is never to be presumed. (*Bissel* v. *The N. Y. C. R. R. Co.*, 23 N. Y. 64; 3 Kent's Com. 433, 434; 2 Wash. on Real Prop. 635; *Jackson* v. *Hathaway*, 15 Johns. 447; *Seneca Indians* v. *Knight*, 23 N. Y. 498; *Child* v. *Starr*, 4 Hill, 369; 34 Barb. 515; 50 N. Y. 694; 3 Kent's Com. 432; *White's B'k of Buffalo* v. *Nichols*, 64 N. Y. 70; *English* v. *Brennan*, 60 id. 609; *Mott* v. *Mott*, 68 id. 253; Gerard's R. E. 499; 2 Smith's Lead. Cases, 216; *Dovaston* v. *Payne*, 3 Abb. N. C. 309.) When such a road is abandoned the land reverts to the original owners. (*Hooker* v. *Utica Turnpike Co.*, 12 Wend. 371; *Durham* v. *Williams*, 36 Barb. 136; 37 N. Y. 251.)

*Jesse Johnson* for respondent. The description in plaintiff's deed did not include land to the center of the Wallabout road, but only to its side. (*English* v. *Brennan*, 60 N. Y. 609; *White's B'k*, etc., v. *Nichols*, 64 id. 65; *Augustine* v. *Britt*, 15 Hun, 395; *People* v. *Colgate*, 67 N. Y. 515; *Mott* v. *Mott*, 68 id. 246.) As against defendants the proceedings to close this road or street are invalid. (Girard on City Water Rights

and Streets, 145; *Fearing* v. *Irwin*, 55 N. Y. 486; *Parker* v. *Farmingham*, 8 Metc. 260.) On the facts, according to the well-settled rule of law, a way of necessity was implied as a matter of contract, and remained and existed to this lot. (Washburn on Easements, marg. paging 162–165; *Child* v. *Chappel*, 9 N. Y. 257, 258.)

ANDREWS, CH. J. The title of the plaintiff, to the southerly half of what was formerly the Wallabout bridge road, on which the plaintiff's premises abutted, depends upon the construction of the deed from Garrett Nostrand, to Edward Sanford, dated January 20, 1835. Sanford is the common source of title to the premises of both parties. The defendant's lot also abutted on the Wallabout road, until its discontinuance, long after the conveyance of the respective lots, by Sanford. If Sanford acquired title to the southerly half of the road, under his conveyance from Nostrand, the plaintiff, as his grantee, acquired his title to the part, in front of its premises. Upon the assumption that the plaintiff acquired title to that part of the road, the right of the plaintiff to relief in this action, by injunction, would depend upon questions, not now necessary to be considered. If, however, the title to the southerly half of the road did not vest in Sanford, under his deed from Nostrand, then the action cannot be maintained. The fence torn down by the defendant, was built by the plaintiff, across the southerly half of the road-bed of the Wallabout road, which before that time was uninclosed, and over which the defendant was accustomed to pass, in going to and from her premises. The obstruction was removed immediately after it was erected, and there was no such prior possession by the plaintiff as would, in the absence of legal title, constitute the defendant, a trespasser, in entering upon the land and removing the fence. We come then to the question, whether Sanford acquired title to the road-bed under his deed from Nostrand. That deed purports to convey about seventy-four acres of land lying south of the Wallabout bridge road, described as, "Beginning at a point on the southerly side of the Wallabout bridge road, adjoining the

land now or lately belonging to John Skillman," and after running certain courses and distances, the line ran along the land of one Jacobus Lott, "north, forty-eight degrees and nine minutes west, five hundred and ninty-four feet to the Wall-about bridge road," and from thence "along said road, twelve hundred and twenty feet to the place of beginning."

There is but little diversity in respect to the general principles governing the construction of grants of land on a highway, but there is much contrariety of decision in the several States, in respect to their application, in particular cases, and in the construction of particular language, as bearing upon the point, whether the highway is, by the descriptive language of the conveyance, included in, or excluded from, the grant. It is generally conceded, that a grantor of land abutting on a highway may reserve the highway from his grant. But the presumption in every case is, that the grantor did not intend to retain the highway, and such reservation will not be adjudged, except when it clearly appears, from the language of the conveyance, that such reservation was intended. But what language will be sufficient to exhibit such intent, is the point of difficulty, upon which courts have differed. It was settled in this State, in *Child* v. *Starr* (4 Hill, 369), that a boundary in a deed, "along the shore" of a fresh-water river, carried the grantee only to low-water mark, and that the bed of the river did not pass under the conveyance. So a boundary by the *bank* of a creek, has been held to confine the grantee, to the margin of the stream. (*Halsey* v. *McCormick*, 13 N. Y. 296.) In *the Seneca Nation, etc.* v. *Knight* (23 N. Y. 498), the boundary was described as "beginning at a post on the *north* bank" of the Cattaraugus creek, and thence ran, by various courses and distances, to a post on the *north* bank of the creek, "thence down the same, and along the several meanders thereof, to the place of beginning," and it was held that the grant included the bed of the stream, to the center. The court, approved the remark of Chancellor WALWORTH, in *Child* v. *Starr*, that monuments in such cases are only referred to, as giving the directions of the lines to the

river, or stream, and not as restricting the boundary on the river. The court also remarked, that in a case of boundary on a river, monuments are never located, in fact or in description, in the channel of a river, and that monuments were necessary, in order to mark the places of intersection with the stream. There is a close analogy, between conveyances bounded by fresh-water streams, and by highways, in respect to the point of construction of descriptive words. In the case before us, the starting point of the description is on the southerly side of the Wallabout bridge road, and the exact point of beginning, is fixed by the reference to the lands of Skillman. The other lines are described by courses and distances, and the third course gives the length of that line in feet, to the road, which we think fairly imports, that the measurement is to the side of the road, and the fourth course is along the road, etc., to the place of beginning. We think the road-bed was excluded by the terms of the description, within the cases of *Jackson* v. *Hathaway* (15 Johns. 447); *English* v. *Brennan* (60 N. Y. 609); *White's Bank of Buffalo* v. *Nichols* (64 id. 65). In *Jackson* v. *Hathaway*, the description was " beginning at a certain stake by the side of the road called the old Claverack road, etc., from which stake running east, twenty degrees south, two chains to another stake; thence south, twenty-two degrees west, seventeen chains, sixty-four links; and thence " by specified courses and distances " to the first-mentioned bounds, making twelve acres, two roods and ten perches of land." It was held that the highway was not included. In *English* v. *Brennan*, the court reached the same conclusion, where the description was: " Beginning at the south-westerly corner of Flushing and Clermont avenues, running thence westerly along Flushing avenue twenty-five feet, thence southerly at right angles to Flushing avenue, seventy-nine feet nine inches to a point distant forty feet seven and a half inches westerly from the westerly side of Clermont avenue, thence easterly on a line at right angles to Clermont avenue, forty feet seven and a half inches, thence northerly, etc., to the point of begin-

ning." In *White's Bank, etc.,* v. *Nichols,* the reasoning of ALLEN, J., is much in point. He says: " The grant under which the defendant claims title, describes the granted premises as commencing at the intersection of the exterior lines of two streets, of which Garden street is one, and so as necessarily to exclude the soil of the street.   The point thus established is as controlling as any monument would have been, and must control the other parts of the description; all the lines of the granted premises must conform to the starting point thus designated."

The cases of *Sibley* v. *Holden* (10 Pick. 249), *Smith* v. *Slocomb* (9 Gray, 36), and *Cottle* v. *Young* (59 Me. 105), are also in point. In *Sibley* v. *Holden,* the description was: "Beginning at a stake and stones on the southerly side of a town road," etc., thence by courses and distances ".to said road, thence by said road easterly to the place of beginning," and it was held that the road was excluded.   In *Smith* v. *Slocomb,* where the description was very similar to that in *Sibley* v. *Holden,* SHAW, Ch. J., said: "But when it starts at the side of the road, and comes back to the road, and thence on the line of the road to the point of beginning, the conclusion is inevitable, that the road is excluded."   The words *to* and *along* the road, in the description now in question, if not controlled by the starting point, would, by well-settled construction, carry the boundary to the center; but it is to be observed that these words are not inconsistent with confining the boundary to the side of the road.   It was held in *Dunham* v. *Williams* (37 N. Y. 251), that a deed bounded on a highway, is satisfied by title extending to the side of the road, when the title to the road-bed was not in the grantor, and according to the principle of that case, the absence of such title, where the description runs *to* and *along* a highway, would not constitute a breach of the covenant of seizin. In this case no reason appears, why Nostrand should desire to retain title to the land in the Wallabout road.   The Wallabout Bridge Road Company was a corporation created by special

charter, by chapter 86 of the Laws of 1805, with authority to take land for its road, by private grant, or compulsorily, on paying the damages assessed, in which case the act declares the company and their successors and assigns forever, shall have and hold "the lands and tenements occupied by the said road." The side of the road may have been made the boundary of the land conveyed, upon the mistaken supposition that the company had acquired, by the proceedings for condemnation, the absolute title to the land taken, or some other reason may have existed for restricting the grant. But we have no guide in ascertaining the intention of the parties to the conveyance, outside of the language of the deed, and upon this language, as interpreted by the courts of this State, in analogous cases, we think the southerly side, and not the center of the Wall-about road, is the boundary.

These views lead to an affirmance of the judgment.

All concur.

Judgment affirmed.