### HOLLOWAY *v*. DELANO *et al.*

(*Circuit Court, New York County.* October, 1891.)

ROADS AS BOUNDARIES—EASEMENT OF GRANTEE.
> A conveyance of land, describing it as bounded by a certain existing highway, creates no private easement in favor of the grantee which can be set up against the owners of the fee on the closing of the road by public authority.

Ejectment by James W. Holloway against Franklin H. Delano and others. *James A. Deering*, for plaintiff. *Evarts, Choate & Beaman*, (*George De Forest Lord*, of counsel,) for defendants.

O'BRIEN, J. The plaintiff brings four actions in ejectment to recover possession of certain parcels of land within the lines of the old Bloomingdale road, (closed under the act of 1867, c. 697,) between Eighty-Ninth and Ninetieth streets, Ninetieth and Ninety-First streets, Ninety-Second and Ninety-Third streets, and Ninety-Fifth and Ninety-Sixth streets. The plaintiff claims title thereto as one of the heirs at law of Charles Ward Apthorp, who, in the years 1762 and 1763, acquired title to a large tract of plantation between what is now Central park and Hudson river and Eighty-Ninth and Ninety-Ninth streets, containing upwards of 210 acres, and embracing the lands within the lines of the road. The defendants, besides denying plaintiff's ownership, assert title, under the act of 1867, as owners of the abutting lands, and further claim that, even if the fee to the lands is owned by plaintiff, they are subject to a perpetual easement in favor of defendants as such abutting owners.

The facts are so voluminous and so fully set forth in the record, and every question of law applicable thereto has been so elaborately discussed in the able briefs of counsel, that it remains for me but to state the conclusions, and

briefly to give the reasons upon which such conclusions are based. Unless those under whom plaintiff claims conveyed the fee or some easement in favor of those under whom defendants claim, then, upon the closing of the Bloomingdale road, the fee in the lands embraced within the road-way reverted to the heirs of Charles Ward Apthorp. This necessarily results from the extinguishment of the public easement by the closing of the road, and the reverting of the lands "in full and unqualified dominion" to the original owners and their heirs. In other words, "the entire and exclusive enjoyment reverts to the proprietor of the soil." *Jackson* v. *Hathaway*, 15 Johns. 452. It is not by these expressions to be understood that any private rights or easements would be thus destroyed, but only that upon such closing the owner of the fee takes it free from any lessening of his absolute ownership and control as the road in its public character created. If the owner of the fee had by contract vested a private easement in a third person, which, by its terms, was not made dependent upon the continuance of the public rights, the private easement would still subsist or exist in favor of such third person after the closing of the street or road. The questions, therefore, to determine are, did the defendants acquire a fee in the lands, or, if this is decided against them, did they acquire any private easements which survived the extinguishment of the public easement upon the closing of Bloomingdale road? It is evident that a solution of these questions must depend entirely upon the construction to be given to the deeds from the children and heirs at law of Apthorp to Clarkson, Jauncey, and Shaw, and others introduced in evidence. Reading these deeds in the light of the decisions and the rules of the construction therein given, I am of opinion, whatever the earlier cases may have decided, that *English* v. *Brennan*, 60 N. Y. 609; *Bank* v. *Nichols*, 64 N. Y. 65; and *Insurance Co.* v. *Stevens*, 87 N. Y. 287,—are in favor of plaintiff's contention that there was no grant to the defendants' grantors of the fee in the road-bed of Bloomingdale road. The other question, as to whether or not a private easement was granted, is a much more difficult one. Such an easement, it is claimed, arises out of the mere fact of the conveyance of lands abutting on a highway. Leaving out of consideration, however, cases like *Darker* v. *Beck*, 11 N. Y. Supp. 94; *Wheeler* v. *Clark*, 58 N. Y. 271; *Insurance Co.* v. *Stevens*, 87 N. Y. 287, 101 N. Y. 411, 5 N. E. Rep. 353,—in which the easements claimed were rights of way over lands not immediately in front of, but contiguous to, the dominant estate, in which a view more favorable to plaintiff is taken, and considering only cases where the easements involved were those of air, light, and convenience of access, here, also, upon the facts presented, I think plaintiff is supported by the weight of authority. There is a line of cases, such as *In re Eleventh Ave.*, 81 N. Y. 437, and *In re Ladue*, 118 N. Y. 213, 23 N. E. Rep. 465, wherein the grants were made by one who, in laying out a plot of ground into lots, streets, etc., and bounding such lots with reference to streets thus laid out or contemplated before the same were legally accepted or dedicated as public highways or streets, in which it was held that, even though the fee did not pass, an easement was created in such street in favor of such lot-owner, which even the subsequent closing of the street could not deprive him of. There are other cases, again, where the terms of the grant created, as against a grantor, not only a public easement, but also a private easement in the owner of the abutting land. Such a case is *De Peyster* v. *Mali*, 92 N. Y. 267. I can find no case, however, where, as here, there was an existing road, and the grant was bounded by such road, that such a grant created a private easement in favor of an abutting owner. In laying down this broad statement, I have not overlooked the elevated railroad cases, in which our courts, to protect property owners from an unjust and unlawful invasion of their property rights, have recognized the easement which, in addition to the public, abutting owners had in the streets. There the question was between private

owners and trespassers who, without making compensation therefor, would destroy private rights. There the question did not arise after the lawful closing of a thoroughfare, but related to the impairment of its uses while open. Were the question here as to the right of abutting owners to compensation, I am inclined to think that the principle of the elevated railroad cases might be applicable. Here, however, the street has been closed, the rights of the respective parties to compensation for the closing have been determined, and the awards paid. Here, moreover, the question arises between grantor and grantee after the road had been closed, and these rights it seems to me are to be determined solely by the terms of the grant. Where, by the grant, private easements have been created, these cannot, in favor of a grantor, afterwards be destroyed. In the absence of express words in the grant, this I take to be the distinction as to when such easements will be presumed to exist: That where a public road does not exist, but a grantor, for the purpose of dividing his property into lots, lays out streets either physically or upon a map, and thereafter sells such lots, referring in the description to such streets, then a private easement in favor of the grantee of the lots is created. In such a case, as said in *Bank* v. *Nichols,* 64 N. Y. 73, "the general rule is that where the owner of land in a city lays out a street through it, and sells lots on each side of the street, the public have an easement of way or right of passage, although it may not become a public highway, in the ordinary sense of that term, until the dedication is accepted and the street adopted by the corporation, and the grantees of the lots are entitled as purchasers to have the interval or space of ground left open forever as a street, and to the right of using the way for every purpose that may be usual and reasonable for the accommodation of the granted premises. Neither the corporation of the city, nor the state authorities, nor the grantor, can do any act to impair this right or restrict the grantees in the enjoyment of it." On the other hand, however, as said in *King* v. *Trustees,* 102 N. Y. 175, 6 N. E. Rep. 395, "merely bounding premises by a public highway for purposes of description, and where it is referred to as any fixed mark or monument might be, is very different from selling by reference to a map or plat on which the grantor has laid out streets, and made a dedication, and exposed himself to the equities of an estoppel."

Speaking generally of the four cases, the boundary is by "the Bloomingdale road." This general description does not create a new street or private road, or in terms grant any private right of way or easement in addition to that already possessed by the public for over 100 years. The deed and map referred to are simply a recognition of an established public highway, and the acceptance of the deed by Vanderbilt and Jauncey, bounding the land on this established public road, was an acceptance of it as such public highway, and, as every highway is held or enjoyed subject to public necessity and authority, they must be assumed to have taken simply an easement in common with the public, which the legislature might at any time terminate, and after which no further additional private right existed in them, because not granted to them. My conclusion, therefore, is that defendants' easement was qualified, being one in common with the public in the land as a public highway, subject to the right of the public to extinguish. These views of the laws and facts necessitate that I should direct a verdict in favor of plaintiff, that he have possession as prayed for in the complaint.