WILLARD E. CASE, Appellant, *v.* THE COUNTY OF CAYUGA and THE BOARD OF SUPERVISORS OF THE COUNTY OF CAYUGA, Respondents.

88  59
24ap342
25ap236
88h      59
77 AD¹492

*Board of supervisors — power to consent to the construction of an electric road on a highway — but only for public purposes.*

The use of a highway for a steam or surface railroad by a duly incorporated company is not an infringement of the rights of an owner of land whose premises go to the boundary of the highway only, and where there is no negligence in the construction of the road and its use of the street is not of an exclusive nature such owner is not entitled to damages.

A board of supervisors has "the care and custody" of county real estate; where such property simply abuts upon a street a board of supervisors has power to give consent that a corporation may construct and maintain an electric road in front of the county's premises.

Such a consent is not the grant of an incorporeal hereditament.

Such a consent, however, can only be given to a corporation that has the right to construct and operate a street railway, and for public, not for private purposes; if given to individuals the transaction is illegal as against public policy.

APPEAL by the plaintiff, Willard E. Case, from an order of the Supreme Court, made at the Monroe Special Term and entered in the office of the clerk of the county of Cayuga on the 19th day of March, 1895, vacating an injunction granted in the above-entitled action.

*John M. Brainard,* for the appellant.

*E. C. Aiken,* for the respondents.

WARD, J.:

The plaintiff is a taxpayer in the city of Auburn, Cayuga county, and brings an action under section 1925 of the Code of Civil

Procedure and also under chapter 301 of the Laws of 1892 to prevent waste and injury to the property of the county, and to enjoin against a threatened illegal act, and his complaint alleges that the board of supervisors of the county, assuming to represent the county, were threatening to give the consent of the county to the construction and operation of a street surface railway upon Genesee street in the city of Auburn in front of the real estate of the county, which did not extend into the street, and upon which were located the court house, clerk's office and the jail of the county, abutting on said street ; said railway to be constructed substantially, and the cars used thereon to be drawn or propelled by electric power ; and that such consent was to be in a writing, duly acknowledged and proved as required by law, to Henry S. Dunning, H. B. S. Lord and George F. Willis, as individuals, and without consideration, with power in them, or their survivors, to assign said consent to an existing or proposed corporation as soon as the same was duly chartered and organized.

An injunction was obtained *pendente lite* from a justice of this court restraining the board from giving such consent or any consent to the construction and operation of a street surface railway on Genesee street in front of the property owned by the county. A motion was made at the Monroe Special Term to dissolve this injunction on behalf of the defendants, and upon that motion many affidavits were read, and it appeared that there was in the city of Auburn a street railway operated by a corporation known as the Auburn City Railway Company, and which desired an extension of their railway to that portion of Genesee street upon which the county property was situated. There were many affidavits to the effect that in the opinion of the affiants who resided in the city, and many of them upon the street in question, the construction of the railway and its operation would not in any way injure the county property, but, on the contrary, would be an advantage to it; and nothing appeared in the affidavits to indicate that any further occupancy of the street was contemplated than the reasonable use thereof by a railway placed in the streets and operated by electricity, with the possible exception of one affidavit, which alleged that the street was in fine condition and upon which there were many valuable residences ; that it was macadamized, and the effect of building the railway would

be to tear up the street and to some extent affect the passage over it while the railway was being constructed. The Special Term dissolved the injunction, with ten dollars costs, but ordered that further operation of the order of dissolution, except to permit the board of supervisors to pass a resolution giving consent, "be stayed until the hearing and determination by the General Term of an appeal by the plaintiff."

The appellant makes two points: *First*, that the board of supervisors had not the power to grant the consent of the county. *Secondly*, if such power existed it could only grant consent to some corporation that had authority from the sovereign power to construct and operate the railroad at the place in question.

It may be regarded as the settled law of this State that the use of a highway for a steam or surface railroad by a duly incorporated company is not an infringement of the rights of an abutting owner of lands (one whose premises go to the boundary of the highway only), and such owner is not entitled to damages, and has no legal redress in the absence of negligence in the construction of the railroad, and where there was a reasonable use of the street for the road, and is not exclusive in its nature, but leaves the passages across and through the street free for the public use. (*Fobes v. The Rome, Watertown & Ogdensburg Railroad Co.*, 121 N. Y. 505, and cases cited; *Kane v. The N. Y. Elevated Railroad Company*, 125 id. 164, and cases cited.)

In *Hussner v. Brooklyn City R. R. Co.* (114 N. Y. 433) Judge BRADLEY says that the abutting owner had the right to insist that the switching of steam motors, discharging smoke and cinders in front of the premises and making such noises as to shake the buildings, was a nuisance for which he could have damages, but the judge concedes the principle of the right of the railroad company to use the highway in the manner indicated by the foregoing cases; but the abutting owner has the right to insist that the street shall be open so that from it access may be had to his lot, and light and air furnished across the open space, and this right is an incorporeal hereditament appurtenant to the lot, and forms an integral part of the estate, and as to that the lot becomes the dominant and the street the servient tenement. (*Story v. The New York Elevated Railroad Co.*, 90

N. Y. 145, 146 ; *Kane* v. *New York Elevated Railroad Co.,*
*supra,* 180.)

The cases where this right was asserted were mainly elevated rail-
road cases where the structures were permanent on the street, inter-
fering with travel thereon, and covering the streets with railroad
tracks and structures, obscuring the light and interfering with the
circulation of air and with the sunshine.

It is not perceived that the operation of a street surface railway
by electricity creates any burden to the street in addition to that
imposed by a horse or steam railway, but must be governed by the
same principles in determining the rights of the parties.

The papers upon this appeal do not present the case of such a
threatened invasion of Genesee street as would justify the equitable
or legal interposition of the court in behalf of the abutting owner.

The consent that is sought from the supervisors seems to be
required by chapter 723 of the Laws of 1894, which provides that
consents of property owners and local authorities shall be given in
writing, acknowledged or proved as a deed entitled to be recorded,
of the owners of one-half in value of the property bounded on,
and the consent of the local authorities having control of the street,
before the surface railroad can be built, extended or operated. This
statute imposes a duty upon the company as a condition precedent
to taking the streets for the purposes of its railroad, and the papers
disclose that great importance is attached to this consent by both
parties to this controversy with regard to securing the necessary num-
ber of consents of property owners. It is important to inquire what
is the nature and extent of the consent sought in this case. The
supervisors have not the power to convey or transfer any of the real
estate of the county, except it may be in connection with the change,
disposition or sale of the county site or some of its buildings
under certain conditions. The statute only gives the board "the
care and custody" of the real estate. It is a body of limited juris-
diction and cannot exceed the powers expressly conferred upon it
by statute or such as may be necessary to carry those powers into
effect. If this consent is to be regarded as in any manner transfer-
ring or disposing of any portion of the real estate of the county or
of any right appurtenant thereto and necessary for the enjoyment
thereof, then such consent would be void for want of power. The

question is, what this consent carries with it. In our judgment it simply gives the consent of an abutting owner, that the statute requires, perhaps to make up the necessary number to confer the franchise upon the railroad corporation. The consent is simply to build and operate a railroad, the operation of which works no injury to the county. Under the general powers conferred upon boards of supervisors, they have for the county the general management and control of the county property ; they keep the property in order ; make repairs ; consent to temporary use of the property not inconsistent with its general purposes ; discharge such duties as are imposed upon the county by statute ; exercise permissive powers like the granting of statutory consent, where the substantial rights of the county are not affected or its property interests impaired, and we think under those general powers they had the right to execute a proper consent, representing the county, for a surface railroad upon this street. If it were proposed to construct an elevated road upon Genesee street, or any structure that would impair the ordinary use of the street, affect the access to the county buildings or shut out the light or sunshine from them, or if such conditions existed as appear in *Hussner* v. *Brooklyn City R. R. Co.* (*supra*), a very different question would arise, because then the supervisors would be parting by their consent with an incorporeal hereditament or right appurtenant to the county property which would be an injury to the property and which, in our judgment, the board would not have power to do. But the consent proposed is illegal in this respect ; as we have seen, it gives to three individuals the power to assign the same to an existing or proposed railroad corporation. The consent can only be given to a corporation that has the right to construct and operate the street railway. It must be given for public and not private purposes, and it is against public policy to permit any intermediary to take such consent that may be used for purposes of speculation or private profit and not for the public good. A procedure of this nature in principle is pointedly condemned in *Fanning* v. *Osborne* (102 N. Y. 441).

The injunction should be modified in this respect, that the supervisors shall only be permitted to give the consent to construct and operate a surface railway upon the street in question to some corporation duly authorized by law to construct and operate the same,

but are restrained and prevented from executing the consent set forth in the complaint in this action; and the injunction thus modified to stand.

Costs of this appeal should not be allowed to either party.

LEWIS and BRADLEY, JJ., concurred; DWIGHT, P. J., not voting.