H. VAN RENSSELAER KENNEDY, Appellant, *v.* THE MINEOLA, HEMPSTEAD AND FREEPORT TRACTION COMPANY, Respondent.

*Railroad — action to restrain the construction of its road by an abutting owner — description in a deed — proof as to the title to the fee of a highway.*

Upon the trial of an action brought by the owner of property abutting upon the east side of Freeport road in the town of Hempstead, Nassau county, to enjoin the construction and maintenance of a street surface railroad upon the easterly half of the highway in front of his premises, it appeared that the plaintiff's title was derived under a deed executed in 1893 by Laura A. Duryea and her husband. This deed contained the following description: "Beginning at a point *on the North Easterly side of the Babylon Turnpike (so called) at a point intersecting the land of J. Tompkins;*" thence by various courses and distances "*until it comes to the North easterly side of the Babylon Turnpike* (so called); *thence along said Turnpike* North forty-five degrees, forty-one minutes West one thousand one hundred and fifty-nine feet; *thence along said Turnpike North* forty-six degrees, forty-nine minutes West one hundred and thirty and three tenths feet; thence *still along said Turnpike* North fifty-four degrees three minutes West three hundred and sixty-two and three tenths feet to the point or place of beginning. Containing within said bounds twenty-three 3612/10000 acres of land be the same more or less. Together with all the rights of the Grantor in and to said Babylon Turnpike," etc. ·

Mrs. Duryea's title was derived under deeds from Joseph S. Morrell and Joseph E. Tompkins.

The Morrell deed, which was executed in 1873, described the land as "lying on the easterly side of the Highway" and bounded "Westerly by said Turnpike Road." It also described the premises as follows: "Beginning at the *Southwesterly corner thereof on the easterly side of the Highway* formerly known as the South Oyster Bay Turnpike Road adjoining land of Joseph E. Tompkins *and at a locust stake driven in the ground,* and running thence *along said Highway* South fifty-five degrees and twenty-five minutes East three hundred and twenty feet and three tenths of a foot; *thence still along said highway* South forty-seven degrees and forty-five minutes East, one hundred and thirty feet and three tenths of a foot; *thence still along said* highway," etc.

The Tompkins deed, which was executed in 1874, described the premises as follows: "All that certain piece or parcel of land situated near the Village of Hempstead and in the Town of Hempstead aforesaid *and on the Northerly side of the old Babylon Turnpike,* and bounded as follows, viz.: Beginning at a locust stake and running *along the Northerly side of the Babylon Turnpike,*" etc.

It was not shown that Mrs. Duryea's grantors ever had any title to the highway or any reserved right therein, but it appeared that the amount of land included in the description, according to lines and courses, contained in the deed from Mrs. Duryea to the plaintiff corresponded with the amount stated in the deed, while if the eastern half of the highway was included, the acreage would exceed that named in the deed by one and fourteen one-hundredths acres.

*Held,* that neither the deeds to Mrs. Duryea nor the deed from the latter to the plaintiff conveyed the easterly half of the highway, and that the complaint was properly dismissed.

APPEAL by the plaintiff, H. Van Rensselaer Kennedy, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Nassau on the 24th day of April, 1902, upon the decision of the court, rendered after a trial at the Nassau Special Term, dismissing the complaint upon the merits.

*F. H. Van Vechten,* for the appellant.

*Augustus Van Wyck* [*James A. MacElhinny* with him on the brief], for the respondent.

GOODRICH, P. J.:

The plaintiff's action is to enjoin the defendant, a street surface railroad corporation, from constructing and maintaining a railroad in front of his property on the east side of Freeport road in the town of Hempstead, Nassau county, and from interfering with him

·SECOND DEPARTMENT, DECEMBER TERM, 1902.        [Vol. 77.

in removing the road constructed by the defendant; to recover damages occasioned to the plaintiff by the construction of the railroad, and also to have the construction of the railroad declared illegal and its maintenance a nuisance inflicting special injury and damage upon him.

The plaintiff is the owner of a tract of land on the easterly side of the highway, containing about twenty-three and thirty-six one-hundredth acres of land, more or less, with a frontage upon the road of about sixteen hundred and fifty-one feet. He also claims the ownership of the fee of the easterly half of the highway in front of his premises. Upon this part of the highway the defendant was constructing the street railroad which the plaintiff seeks to enjoin.

Plaintiff's title is under a deed executed in 1893 by Laura A. Duryea and her husband, containing the following description:

" Beginning at a point *on the North Easterly side of the Babylon Turnpike (so called) at a point intersecting the land of J. Tompkins,* thence North thirty-five degrees, thirty minutes East three hundred and fourteen and eight tenths feet along land of said Tompkins until it comes to the land of J. K. Boyd, deceased, thence North seventy-four degrees, twenty-six minutes East, six hundred and ninety-five and seven tenths feet along said Boyd's land until it comes to the land of William Powell; thence along the land of William Powell South twenty-four degrees, forty-eight minutes East, five hundred and eighty-seven and seven tenths feet; thence along the land of said Powell South twenty-two degrees, thirty-two minutes East one hundred and eighty-two and five tenths feet; thence still along said Powell's land South thirty degrees, four minutes East, six hundred and fifty-four and three tenths feet until it comes to the land of H. Duryea; thence along said Duryea's land South forty-four degrees fifteen minutes West, three hundred and ninety-four and six tenths feet *until it comes to the North easterly side of the Babylon Turnpike* (so called); *thence along said Turnpike* North forty-five degrees, forty-one minutes West one thousand one hundred and fifty-nine feet; *thence along said Turnpike North* forty-six degrees, forty-nine minutes West one hundred and thirty and three tenths feet; thence *still along said Turnpike* North fifty-four degrees three minutes West three hundred and sixty-two and

three tenths feet to the point or place of beginning.  Containing within said bounds twenty-three 3612/10000 acres of land be the same more or less.  Together with all the rights of the Grantor in and to said Babylon Turnpike," etc.

Mrs. Duryea's title was under two deeds, one from Joseph S. Morrell, dated April, 1873, wherein the land was described as "*lying on the easterly side of the Highway*," and bounded "Northerly by land now or formerly belonging to Townsend B. Pettit; Easterly and Southerly by land formerly belonging to James Powell and Westerly *by said Turnpike Road* and as containing within said bounds twenty-eight acres more or less.  Which said farm or tract according to a recent survey thereof made by James J. Matthews, is bounded and described as follows, to wit:

"Beginning at the *Southwesterly corner thereof on the easterly side of the Highway* formerly known as the South Oyster Bay Turnpike Road adjoining land of Joseph E. Tompkins *and at a locust stake driven in the ground,* and running thence *along said Highway* South fifty-five degrees and twenty-five minutes East three hundred and twenty feet and three tenths of a foot; *thence still along said highway* South forty-seven degrees and forty-five minutes East, one hundred and thirty feet and three tenths of a foot; *thence still along said* highway South forty-six degrees, and forty-one minutes East one thousand one hundred and fifty-seven feet to land of Stewart S. Haff, thence along said land North seventy-one degrees, and thirty-four minutes East, three hundred and ninety feet and seven tenths of a foot to land of William Powell; thence along said Powell's land North thirty-one degrees, and thirty-six minutes West, six hundred and thirty-four feet and eight tenths of a foot; thence still along said land North twenty-nine degrees, and thirty-eight minutes West, two hundred and eight feet and four tenths of a foot; thence still along said land North twenty-three degrees, and twenty-one minutes West, one hundred and eighty-two feet, and four tenths of a foot; thence still along said land North twenty-five degrees and forty-four minutes West, five hundred and eighty-seven and one-half feet to land of Nicholas Degroot; thence along said land and land of Joseph E. Tompkins South seventy-three degrees and twenty-nine minutes West, eight hundred and twenty-eight feet and eight tenths of a foot; thence along said land of said Joseph E. Tompkins, South

four degrees and forty-two minutes West two hundred and forty-six and one-half feet to the highway aforesaid at the point of Beginning."

The other deed was from Joseph E. Tompkins to Mrs. Duryea, dated May 25, 1874, and contained the following : " All that certain piece or parcel of land situated near the Village of Hempstead and in the Town of Hempstead aforesaid *and on the Northerly side of the old Babylon Turnpike,* and bounded as follows, viz. :   Beginning at a locust stake and running *along the Northerly side of the Babylon Turnpike* as aforesaid North fifty-five degrees and twenty-five minutes, West forty-one and seven tenths feet to land of said Joseph E. Tompkins ; thence along the said Joseph E. Tompkin's land North thirty-four degrees and thirty-five minutes, East seventy-one and six tenths feet to land of the aforesaid Laura D. Duryea ; thence along the said Laura D. Duryea's land South four degrees and forty-two minutes West eighty-two and eight tenths feet to the place of beginning.   Containing One thousand four hundred and ninety-two and eight tenths square feet."

I have italicized the portions of the descriptions which, in my view, must control our decision.

The plaintiff contends that under these deeds his grantor, Mrs. Duryea, was the owner of the fee of the easterly half of the highway and that under the description of her deed to him, especially under the clause, " Together with all the rights of the Grantor (that is, Mrs. Duryea) in and to said Babylon Turnpike," he is the owner of the fee of the easterly half of the highway, and the validity of this claim is the question involved in this appeal.

The court at Special Term decided that while the plaintiff was owner of the property east of the highway he was " not the owner of the fee of that part of the highway known as the Freeport road, or Greenwich street, which lies easterly of the centre line of said highway in front of the property owned by him," and dismissed the complaint, saying : " The action being founded upon an alleged trespass upon real property of the plaintiff it follows that the complaint must be dismissed upon the merits."

In *Kings County Fire Ins. Co.* v. *Stevens* (87 N. Y. 287) there was a deed conveying land on the " southerly side of the Wallabout bridge road."   After running certain courses and distances the line ran " five hundred and ninety-four feet to the Wallabout bridge

road," and from thence, "along said road, twelve hundred and twenty feet to the place of beginning." The court said (pp. 291, 292): "It is generally conceded that a grantor of land abutting on a highway may reserve the highway from his grant. But the presumption in every case is, that the grantor did not intend to retain the highway, and such reservation will not be adjudged, except when it clearly appears from the language of the conveyance that such reservation was intended. But what language will be sufficient to exhibit such intent, is the point of difficulty, upon which courts. have differed. * * * In the case before us the starting point of the description is on the southerly side of the Wallabout bridge road, and the exact point of beginning is fixed by the reference to the lands of Skillman. The other lines are described by courses and distances, and the third course gives the length of that line in feet, to the road, which we think fairly imports that the measurement is to the side of the road, and the fourth course is along the road, etc., to the place of beginning. We think the road-bed was excluded by the terms of the description, within the cases of *Jackson* v. *Hathaway* (15 Johns. 447); *English* v. *Brennan* (60 N. Y. 609); *White's Bank of Buffalo* v. *Nichols* (64 id. 65)."

In the case last cited it was said (p. 70): "Whether a grant of lands bounded by a street, highway or running stream, extends to the center of such street, highway or stream, or is limited to the exterior line or margin of the same, depends upon the intent of the parties to the grant as manifested by its terms, so that the question as to the true boundary is, in all cases, one of interpretation of the deed or grant." The deed under which title was claimed described the property as beginning on the northwesterly line of a street, intersecting the northeasterly line of another street, and thence along the line of Carolina street to the place of beginning. The court said (pp. 71, 72): "Although the highway is in one sense a monument, it is regarded as a line, and the center of the highway in such case is regarded as the true boundary indicated, as is the case when a tree, stone or other similar object is designated as a monument; the center, in the absence of any other indication, is regarded as giving the true boundary or limit of the grant. (*Berridge* v. *Ward*, 10 C. B. [N. S.] 400; *Wallace* v. *Fee*, 50 N. Y. 694; *Perrin* v. *N. Y. C. R. R. Co.*, 36 id. 120; *Bis-*

*sell* v. *The Same*,* 23 id. 61; *Banks* v. *Ogden*, 2 Wall. 57.) But when the words clearly indicate an intention to exclude from the operation of the grant the soil of the highway, it is equally well settled that it does not pass, and the grantor retains the title, subject only to any easement which may exist in the public or in the grantee of the adjacent lands. (*Marquis of Salisbury* v. *G. N. Railway Co.*, 5 C. B. [N. S.], 174; *Jackson* v. *Hathaway*, 15 J. R. 447; *Smith* v. *Slocomb*, 9 Gray, 36; *Hoboken Land and Improvement Co.* v. *Kerrigan*, 31 N. J. Law Rep. 16.) The grant under which the defendant claims title, describes the granted premises as commencing at the intersection of the exterior lines of two streets, of which Garden street is one, and so as necessarily to exclude the soil of the street. The point thus established is as controlling as any monument would have been, and must control the other parts of the description; all the lines of the granted premises must conform to the starting point thus designated, so that while but for this designation of the commencement of the survey or boundary, the lines along Garden street and Carolina street might, within the general principles before referred to, be carried to the center of those streets respectively, they are necessarily confined to the exterior lines of the streets, so as to connect at this starting point. The precise point was decided by this court. (*English* v. *Brennan*, 60 N. Y. [Mem.] 609.)"

Applying these authorities to the case at bar, we find that the description of the plaintiff's deed specifies a definite point from which the lines of the plot are run. It is a point on the northeasterly side of the turnpike "at a point intersecting (*sic*) the land" of Tompkins. From that point the description proceeds by courses and distances "until it (the line) comes to the North easterly side of the Babylon Turnpike," then in three courses, each time stated to be "thence along said Turnpike," "to the point or place of beginning," that is, the point already specified on the northeasterly side of the turnpike. If the description had used the words "along the northeasterly side of the turnpike," it is clear that the highway would have been excluded. But it seems to me clear that, under the decisions cited, the language of the description in the plaintiff's deed excludes the idea that there was any intent to include the highway.

---

* *Bissell* v. *N. Y. C. R. R. Co.*

The only doubt that arises in my mind is occasioned by the use of the words "Together with all the rights of the Grantor (Mrs. Duryea) in and to said Babylon Turnpike." This necessitates a reference to the deeds to Mrs. Duryea, in order to see whether she had any right or interest in the highway.

In the deed from Mrs. Duryea to the plaintiff the description is of a tract on the easterly side of the highway "Beginning at a point on the North Easterly side" of the turnpike, "at a point intersecting (*sic*) the land of J. Tompkins," and running by courses and distances until, by a line of specified length, "it comes to the North easterly side" of the turnpike.

The beginning of the description in the Morrell deed to Mrs. Duryea is more precise. It reads "on the easterly side of the Highway * * * and *at a locust stake driven in the ground,*" thence running "along said Highway" and returning a specified number of feet "to the highway aforesaid at the point of Beginning." The length of the front of the premises along the highway in this deed is stated to be 1,607 feet.

The second deed to Mrs. Duryea, that is, the deed from Tompkins, also describes the property as being on the northerly side of the highway, "*Beginning at a locust stake* and running along the Northerly side of the Babylon Turnpike * * * forty-one and seven tenths feet," etc., returning a given number of feet "to the place of beginning."

Thus in each of the deeds to Mrs. Duryea, the grantor of the plaintiff, there is a fixed and definite point marked by a locust stake on the easterly or northerly side of the highway as a monument, at which the description commences and to which it returns. The use of this locust stake as a monument, in connection with the other words of the description above quoted, would seem to manifest the intention of the grantors that such stake and not the center of the highway should be the monument of the description (See *White's Bank of Buffalo* v. *Nichols, supra*), and thus to exclude the highway from the land conveyed by such deeds.

There are no previous deeds in evidence. It is not shown that either Morrell or Tompkins, Mrs. Duryea's grantors, ever had any title to the highway or any reserved right therein. The mere recital of the reservation of rights cannot create rights which are

not proven to exist.    It was incumbent on the plaintiff to prove, by going back even to the original patentee or donee, that at some time some one of his predecessors had title to the land under the highway.    (*Miller* v. *Long Island R. R. Co.,* 71 N. Y. 380.)    In the present case the plaintiff has failed to prove that his grantor or any predecessor in title ever had any rights in the highway.

In addition to this, as shown in the calculation set out in the respondent's brief, the accuracy of which is not challenged in the appellant's answering brief, the amount of land included in the description, according to lines and courses, is twenty-three and thirty-five one-hundredths acres, which is the amount of land stated to be conveyed in the latter part of the description in the plaintiff's deed.    This area excludes the highway.    The inclusion of the highway would add an acreage of one and fourteen one-hundredths, making in all twenty-four and forty-nine one-hundredths acres, and this exceeds the amount named in the deed.    This method of referring by way of explanation to the quantity of land called for by the courses and distances named in a deed was used by the court in *Higinbotham* v. *Stoddard* (72 N. Y. 94), referred to in *Watson* v. *City of New York* (67 App. Div. 573), where the court, Mr. Justice HATCH writing, said (p. 580): "Where a specific quantity of land is located by precise measurements, such measurements may be laid hold of as evidencing the intent of the parties, and will be controlling of the center of the street as a monument, when it appears that the quantity of the land within such boundary evidently answers to the intention of the parties."

There is no evidence, therefore, upon which to sustain the contention of the plaintiff that his grantor, Mrs. Duryea, was or that he is the owner of the fee of the easterly half of the highway.

As an abutter, the plaintiff is not entitled to an injunction restraining the construction of a railroad authorized by the State. (*Fobes* v. *R., W. & O. R. R. Co.,* 121 N. Y. 505; *Case* v. *County of Cayuga,* 88 Hun, 59; *Fries* v. *N. Y. & Harlem R. R. Co.,* 169 N. Y. 270.)    In the last case it was said (pp. 276, 277): "The law is well settled in this State that where the property of an abutting owner is damaged, or even his easements interfered with in consequence of the work of an improvement in a public street conducted under a lawful authority, he is without remedy or redress, even

though no provision for compensation is made in the statute. Whatever detriment the improvement may be to the abutter in such cases, is held to be *damnum absque injuria.*" (Citing cases.)

It follows that the plaintiff has not established by evidence any title to or possession of the easterly half of the highway and is not entitled to an injunction or to the relief demanded.

The judgment should be affirmed.

All concurred.

Judgment affirmed, with costs.