ALLEN, Respondent, vs. CLAUSEN, imp., Appellant.

*April 3—April 22, 1902.*

*Street railways: Unauthorized grant of franchise to individuals: In-
junction: Equity.*

1. The owner of a lot abutting on a street may enjoin the laying of
   a street railway track which is about to be laid without author-
   ity of law in front of his premises.
2. Although a court of equity will not, at the suit of a private in-
   dividual, question the regularity of the proceedings by which
   a municipality has, under duly delegated authority, granted a
   franchise on behalf of the state, of which the grantee is in *de
   facto* exercise and enjoyment, yet where a franchise is relied
   upon to justify otherwise unlawful acts, such a court may in-
   vestigate and determine whether the grantor of such alleged
   franchise had power to grant it.
3. Municipal corporations have power only by delegation from the
   state to grant franchises to use streets for street railway pur-
   poses.
4. Sec. 1862, Stats. 1898, authorizes any municipal corporation to
   grant the use of its streets for street railway purposes to any
   corporation organized for such purpose, "or to any person who
   has the right to construct, maintain, and operate street rail-
   ways." *Held,* that the words quoted refer only to persons who,
   under prior statutes, have already received franchises for such
   purpose, and no such franchise can be granted by a city to
   other individuals.

APPEAL from a judgment of the circuit court for Kenosha
county: FRANK M. FISH, Circuit Judge. *Affirmed.*

On July 2, 1900, the common council of the city of Keno-
sha, over the mayor's veto, passed an ordinance granting to
Patrick F. Haynes and *Gustav L. Clausen,* residents and
citizens of Chicago, Illinois, their associates, personal repre-
sentatives, and assigns, the right to construct and operate a
passenger street railway over certain specified streets in the
city of Kenosha, including South street, opposite the plaint-
iff's premises; also providing that said grantees should have
the right to extend and operate such street railway in and

along any other street or streets in the city of Kenosha when the written consent of the owners of the land representing more than one half of the frontage of each street should be obtained. As a condition it was provided that "at the time of the acceptance of this ordinance, and as a condition precedent to obtaining any rights or privileges thereunder, [the grantees should] file with the city clerk . . . a bond, to be approved by the mayor, . . . in the penal sum of fifty thousand dollars, executed as surety by some reputable and satisfactory surety or guaranty company," with specified conditions, among others, that they should pave certain streets and construct a bridge. It also required them to hold the city harmless from all damages, judgments, etc., resulting from the granting of the privileges, and to file a further bond in the sum of $10,000, with "surety to be approved by the mayor, conditioned upon the faithful performance and observance by said company of all the conditions and provisions of this ordinance." It also required a deposit of $5,000 in money, and the repayment to certain property owners of the cost, already paid by them, for certain paving; and by the last section it was provided that the ordinance should take effect from and after its acceptance in writing, provided that such acceptance should be filed with the city clerk within thirty days after its passage.

The acceptance, together with bonds in attempted compliance, were filed on the 30th day of July; but the $50,000 bond was signed by one individual as surety, and not by any surety or guaranty company, and there was no evidence at the time the case was tried, in October, that the same had been approved by the mayor. The plaintiff, who was the owner of a tract of land having a frontage of about 280 feet on South street and a frontage on two other streets, commenced this action on the 26th day of July, the summons and complaint being served on the defendant *Clausen,* the other defendants not being found. An order to show cause for a

temporary injunction was also served, and heard on July 31st, but was never decided, and did not contain any intermediate restraining order.

The complaint alleged purpose and threat by the defendants to build a street railway at the places permitted by the ordinance, and alleged irreparable damage to the plaintiff's premises occupied by her as a residence and ornamented by shade trees, which would be injured or destroyed by the construction and operation of the road. It prayed injunction against their acceptance of the ordinance or entering upon the construction of any railway thereunder, and from operating any railway along any of the streets mentioned in the ordinance and particularly along the streets bounding plaintiff's premises; also that the ordinance be decreed to be invalid and of no effect; and for general relief. The defendants claimed that their ordinance was a valid franchise, conceded that they intended to build on South street, but not upon the other streets bounding plaintiff's premises, and denied injury to the plaintiff's premises.

The court, upon trial, filed findings substantially in accordance with the allegations of the complaint, but also found that the ordinance as originally submitted by the defendants was published in the official paper for two weeks before it was acted upon, but that no written application for said franchise or for any franchise was filed by the defendants or either of them with the city clerk of said city, except said draft of ordinance, and that the $50,000 bond had never been approved by the mayor. As conclusions of law, the court decided that that part of the ordinance purporting to give the right to construct a railway generally upon streets other than those specified is void; that the construction and operation opposite plaintiff's premises would constitute a continuing trespass, unless authorized by valid grant from the common council of the city of Kenosha; that by failure to file an approved bond prior to August 1, 1900, as required

by section 10 of the ordinance, the grantees failed to acquire or retain any right to the use of said street. Thereupon judgment was entered expressly adjudging that portion of the ordinance attempting to grant general privileges on unspecified streets to be void, and perpetually enjoining and restraining the defendant *Clausen*, his agents, attorneys, servants, employees, and those claiming under or through him, from entering upon South street where the same abuts upon the premises of the plaintiff, and from laying any rails thereon, or constructing or operating any railway thereon, or erecting or maintaining any trolley poles or wires thereon.

That judgment was entered January 9, 1901. On March 12th of the same year and at the same term defendants moved for a new trial on the judge's minutes, and on the ground of newly discovered evidence, to the effect that the mayor had been absent from the city at the time of the trial, having in his possession the $50,000 bond filed by them; that he had treated the same as approved and satisfactory, but on December 6, 1900, had notified defendants of his desire for a bond signed by a surety company, which was thereupon delivered to him, and he, on January 4, 1901, had returned the former bond, accompanied by a letter stating that he had approved the new bond, and with reference to the earlier one said: "This latter bond I have held as approved and satisfactory pending the delivery to me of the guaranty company bond." This motion was denied by order dated May 15, 1901. Thereafter, on May 18, 1901, and after the expiration of the term at which the judgment had been rendered, the defendants made a further motion based upon the facts above stated with reference to the giving and approval of the new bond, praying that the judgment be annulled, modified, or vacated, and the restraining order thereunder and thereby granted vacated or modified, by reason of facts occurring subsequent thereto, or, if that relief should be denied, that the defendants should be permitted to file a bill

of review.   That motion was also denied by order filed July 15, 1901.

The defendant *Clausen* appeals from the whole of the judgment and from both of said orders.

For the appellant there was a brief by *Gerald R. McDowell,* and oral argument by *Mr. McDowell* and *Mr. Wallace Ingalls.*

For the respondent there was a brief by *John C. Slater,* attorney, and *Charles Quarles,* of counsel, and oral argument by *Geo. Lines.*

DODGE, J.   The principal relief granted respondent in the judgment before us is injunction to prevent a strictly private injury to her separate property, which the trial court has, upon sufficient evidence, found will be caused by defendant's threatened entry upon the portion thereof included within South street and construction of street railway thereon. That injury is not one common to others or to the public.   It consists, not in incumbering South street as a public way, nor obstructing general travel thereon, nor in the entry upon lands of others from which they might suffer similar injuries, but in direct entry upon plaintiff's own premises, injuring her in the enjoyment thereof; such injury being irreparable and not remediable by action at law.   That plaintiff must submit to such injury without remedy or compensation, when the acts are done within the street by authority of law, is sustained by a line of decisions from *Hobart v. Milwaukee City R. Co.* 27 Wis. 194, to *Linden L. Co. v. Milwaukee E. R. & L. Co.* 107 Wis. 493, 83 N. W. 851.   But, as is also said in the last-cited case (107 Wis. 510, 83 N. W. 856), "that an abutting lotowner may enjoin the laying of a railway track which is about to be laid without authority of law on the street in front of his premises cannot be doubted for a moment."

In approaching the question whether the defendant's

threatened acts are "by authority of law," we are confronted by an objection urged by appellant to the effect that, since he claims to act under a franchise from the state, a court of equity cannot inquire as to the validity of that franchise at the suit of a private individual; citing *Ashland St. R. Co. v. Ashland,* 78 Wis. 271, 47 N. W. 619; *State ex rel. Att'y Gen. v. Janesville W. Co.* 92 Wis. 496, 66 N. W. 512; *Wright v. Milwaukee E. R. & L. Co.* 95 Wis. 29, 69 N. W. 791; *Milwaukee E. R. & L. Co. v. Milwaukee,* 95 Wis. 39, 69 N. W. 794; *Stedman v. Berlin,* 97 Wis. 505, 73 N. W. 57; *Linden L. Co. v. Milwaukee E. R. & L. Co., supra.* These cases have established the law in Wisconsin that the vacating of a franchise granted by the state can be accomplished only by proceeding in the nature of *quo warranto* in the name of the state, and that it is not within the province of a court of equity, at the suit of a private plaintiff, to question the regularity of the proceedings by which a municipality has, under duly delegated authority, granted a franchise on behalf of the state, of which the grantee is in *de facto* exercise and enjoyment. It has, however, never been held that, where one attempts to justify acts by a pretended license or franchise which the grantor had no power whatever to confer, a court, whether of law or equity, cannot discover that fact and deny the claim of justification. It matters not whether such defect of power rests upon the state itself or upon any of its subordinate agencies attempting its exercise. The readiness of courts so to do has been evinced in many cases in this state and elsewhere. *Sellers v. Union L. Co.* 39 Wis. 525; *Sherman v. M., L. S. & W. R. Co.* 40 Wis. 645; *Chicago & N. W. R. Co. v. M., R. & K. E. R. Co.* 95 Wis. 561, 70 N. W. 678; *Zehren v. Milwaukee E. R. & L. Co.* 99 Wis. 83, 74 N. W. 538; *Pittsburg, C. & St. L. R. Co. v. Hood,* 94 Fed. 618; *General Electric R. Co. v. C., I. & L. R. Co.* 98 Fed. 907, 911; *New Orleans G. L. Co. v. Louisiana L. & H. P. & M. Co.* 115 U. S. 650, 6 Sup. Ct. 252; *Louis-*

*ville & N. R. Co. v. M., J. & K. C. R. Co.* 124 Ala. 162, 26
So. 895; *Zanesville v. Gas Light Co.* 47 Ohio St. 1, 23 N. E.
55. Among the reasons urged against the validity and exist-
ence of the ostensible franchise to defendant on which he
relies as authority of law for his threatened acts, one is ab-
solute want of power in the city of Kenosha to grant it. That
we will consider first.

That the highways of the state are under the control of the
general state government, and that the right to use the same
for telegraphs, telephones, water pipes, or street railways is
by franchise emanating from the state, is declared in many
of the foregoing decisions; also in *State ex rel. Att'y Gen. v.
Madison St. R. Co.* 72 Wis. 612, 620, 46 N. W. 487; *Marsh-
field v. Wis. Tel. Co.* 102 Wis. 604, 609, 78 N. W. 735;
*State ex rel. Att'y Gen. v. Portage City W. Co.* 107 Wis.
441, 83 N. W. 697; *State ex rel. Wis. Tel. Co. v. Sheboygan,*
111 Wis. 23, 86 N. W. 657; 3 Cook, Corp. § 913. As a corol-
lary, it results that the municipal corporations have power to
make such grants only by delegation from the state. For the
subject in hand the only delegation which has been made is
contained in sec. 1862, Stats. 1898, as follows:

"Corporations for constructing, maintaining and operating
street railways may be formed under chapter 86, and shall
have powers and be governed accordingly. Any municipal
corporation or county may grant to any such corporation,
under whatever law formed, or to any person who has the
right to construct, maintain and operate street railways, the
use . . . of any streets or bridges within its limits for
the purpose of laying single or double tracks and running
cars thereon."

It is a general proposition that a municipal corporation
possesses and can exercise only powers granted by express
words, or those necessarily implied therein or incident there-
to, or those essential to the declared purposes,—not merely
convenient, but indispensable. Any ambiguity or doubt as to
existence of a power is to be resolved against the corporation,

and the power denied. Dillon, Mun. Corp. § 89 *et seq.* Another cardinal rule of construction is that the grant of a power under specified circumstances, or accompanied by defined conditions or limitations, excludes that power otherwise. The maxim, *expressio unius, exclusio alterius,* is especially controlling upon such legislation. The application of such rules of construction to sec. 1862, Stats. 1898, must, of course, result in denial of power in any city to grant franchise to use streets for a street railway, except to a corporation organized for the purpose of operating such establishment under our statutes, or to persons "who have a right to construct, maintain, and operate a street railway." The last class obviously does not contemplate persons who have merely the common right to do business, for to that end the quoted words would be meaningless. The legislature must have intended to limit such franchises to persons distinguished from the great mass of mankind by the qualifying description. A glance at the history of this legislation discloses the probable existence of a class of persons so distinguished, as also a strong probability of a legislative purpose to recognize that class.

The first delegation of any such power to municipal corporations occurs in ch. 313, Laws of 1860, which authorized the granting of use of streets for street railways "to any street railway company, organized under any general or special act of the legislature of this state, or to any individual, or association of individuals." In the revision of 1878 this act was incorporated as sec. 1862, but changed so as to confine the grant to corporations. About two years after those revised statutes took effect sec. 1862 was amended by ch. 219, Laws of 1881, by inserting, as permissible grantees, "or to any person who has the right to construct, maintain, and operate street railways." The legislative policy evinced by these acts seems obvious: first, in 1878, to confine grants to corporations; secondly, in 1881, to recognize the existence

of individuals who, under authority of the law prior to 1878, were already in possession of rights to operate street railways, and who, therefore, ought to be permitted to receive further grants to enable the development and extension of their railways to meet the public needs and convenience. The descriptive words used with reference to the permitted individual grantees are well adapted to segregate those who already had franchises from the rest of mankind. Those who have not received such franchise cannot, in any fair sense, be said to have the "right to *construct, maintain and operate* a *street* railway." Men generally may, as counsel urge, have the natural right to build and use a railway on their own land or on that of others by their license; but a street railway, as mentioned in the statutes, means one laid in a street, and no man has a right to either construct or operate a railway there without permission so to do from the state.

Appellant's counsel needlessly argue at length for the natural right of individuals to receive such a franchise. That is not questioned, but only whether the legislature has empowered a municipality to grant it to them. As there is no pretense that defendants or any of them are within such class of individuals to whom franchise is so authorized to be granted, we may, for the purposes of this case, consider the statute as if it in terms only authorized grants to street railway corporations, except, indeed, as the express mention of certain individuals the more clearly negatives grant to any others. That an authorization to grant such franchises only to corporations excludes any power to confer one on individuals, and renders void any attempt so to do, has been often decided by other courts. *Detroit C. St. R. Co. v. Detroit,* 12 C. C. A. 365, 64 Fed. 628, 641; *Knoxville v. Africa,* 23 C. C. A. 252, 77 Fed. 501, 507; *Fanning v. Osborne,* 102 N. Y. 441, 447, 7 N. E. 307; *Case v. Cayuga Co.* 88 Hun, 59, 34 N. Y. Supp. 595; *Geneva & W. R. Co. v. N. Y. C. & H. R. R. Co.* 24 App. Div. 335, 340, 48 N. Y. Supp. 842;

*Homestead St. Ry. v. P. & H. E. St. Ry.* 166 Pa. St. 162, 172, 30 Atl. 950.

The reasons for such holdings are obvious. The legislature having created corporations for the public purpose of operating street railways, having hedged them about with a code of statutory regulations for the safety and convenience of the public, and having the reserved right to change and control them, even to destroy them, may well adopt a policy of conferring extraordinary rights in its highways only upon the corporate bodies so within its control. We cannot doubt that such legislative policy and purpose is apparent in our statutes, and that from the municipal corporations has been withheld any power to grant to individuals, except of the specified class, franchises to construct or operate street railways in or over the public streets. In this view, and under the authorities above cited, the attempt by the city of Kenosha to confer such privilege upon these defendants was utterly futile, and does not constitute authority of law to protect them when disturbing plaintiff's private rights.

This conclusion, of course, renders unnecessary consideration of the details of the ordinance, or of the proceedings in enacting or accepting the same, as well as any decision upon the extent to which a court of equity can properly go in such consideration. Our decision rests upon entire absence of power, and not upon the manner of executing a power if any existed. Neither does there remain any necessity to discuss the propriety of the orders appealed from, denying motions for a new trial and for vacation of the judgment, or, in alternative, leave to present a bill of review. No grounds are suggested as the bases of either motion which can avert the result of the conclusion reached on the merits. As to the last motion, we might call attention to *Crowns v. Forest L. Co.* 102 Wis. 97, 78 N. W. 433.

*By the Court.*—Judgment affirmed.