HAYNES and others, Appellants, vs. KENOSHA ELECTRIC RAILWAY COMPANY, imp., Respondent.

*January 8—May 11, 1909.*

*Street railways: Contracts: Construction: Mortgages: Property included: Construction contract: Ownership of material: Consideration for bond issue: Corporations: Stocks: Bonds: Illegal issue: Validity: Statutes: Construction: Foreclosure: Judgment.*

1. Under a contract with a street railway company for construction of its track whereby the railway company is to pay the actual cost of completing its line, plus fifteen per cent. to cover the work of engineering and supervision by the contractor, settlement to be made each month, the contractor is in effect the agent and employee of the railway company.
2. As to materials that are affixed to and made a part of a street railroad which is subject to a mortgage, both present and future property will be subject to the lien of such mortgage in favor of *bona fide* mortgage bondholders, in superiority to any contract between the vendor of the materials and the railway company.
3. After a construction company, under a contract with a street railway company whereby it was to furnish all material and labor in building the railroad line at actual cost thereof, plus fifteen per cent. for engineering and supervision, had completed part of the work and delivered materials upon the ground, it was discovered that the franchise for the operation of the street railway was invalid. Thereupon the railway company agreed to give A., who controlled both companies, money and bonds substantially equal to the amount due the construction company, A. agreeing to save the railway company harmless under

its contract, which was silent as to the ownership of the road as constructed or as to the ownership of the material delivered, and made no provision for the acceptance of the work when completed. *Held*, that the transaction, in legal effect, was had between the two corporations, vested the title to the partially completed track in the railway company, and was sufficient consideration to support the bonds issued.

4. Stock or bonds issued in violation of the provisions of sec. 1753, Stats. (1898), may be validated by paying a full consideration therefor without surrender and without reissue.

5. Sec. 1753, Stats. (1898), does not require that payment of the consideration must be contemporaneous with the issue of stock or bonds, and hence where stock or bonds are issued on a supposedly valid consideration, and it transpires that the consideration has failed, they may be validated by the subsequent delivery of the required consideration.

6. Where a street railway company, operating under a supposedly valid franchise, but which was afterwards declared invalid, issued its bonds to a construction company to the amount in value of labor and material wrought into its property, the benefit of which was used and appropriated by a successor street railway company, on foreclosure the fair and reasonable value of such labor and material to the successor company, to that amount and no more, is a lien upon the property of the successor company, prior to any lien originating subsequent to the recording of the mortgage securing such bonds, to satisfy which the whole property of the successor company may be adjudged sold.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Reversed.*

This action is brought to foreclose a trust deed given by the Kenosha Street Railway Company to secure a bond issue of $1,500,000, the bonds bearing date November 1, 1901. The plaintiffs assert that they are the owners and holders of such bonds to the amount of $29,000. Three defenses were pleaded in the answer: (1) The bonds sued on were void, under sec. 1753, Stats. (1898), because the obligor had never received seventy-five per cent. of the par value thereof in money, labor, or property; (2) no consideration was paid by the plaintiffs to their assignor, B. J. Arnold, for said bonds;

(3) the bonds were assigned to the plaintiffs by said Arnold under and in pursuance of a lobbying contract and were therefore void. Only the first ground of defense was relied upon on the trial and it is the only defense insisted upon on appeal. Answers were interposed by the *Kenosha Electric Railway Company* and B. J. Arnold only, and as to Arnold the action was dismissed before judgment was entered. The *Kenosha Electric Railway Company* prevailed on the trial in the circuit court, and the plaintiffs appeal from a judgment dismissing the complaint.

On July 2, 1900, the common council of the city of Kenosha passed an ordinance, numbered 240, purporting to grant to the plaintiffs *Haynes* and *Clausen* a franchise for the construction of a street railway in the city of Kenosha. On July 26, 1900, an action was commenced by one Allen in the circuit court for Kenosha county against *Haynes, Clausen,* and Arnold to enjoin the construction of a street railway under said ordinance. On August 10, 1900, the Kenosha Street Railway Company was incorporated with a capital stock of $25,000. On August 15, 1900, the Kenosha Street Railway Company entered into a contract with the Arnold Electric Power Station Company to design, equip, and construct a street railway in accordance with said ordinance No. 240. By the terms of this contract the construction company was to receive from the street railway company "the actual cost to the Arnold Company of all labor, superintendence, and material of every character entering into the construction of the road . . . plus fifteen per cent., said percentage to be the profit of the said Arnold Company for engineering and constructing the road." Soon after this contract was made work was begun in pursuance thereof, and continued with more or less regularity until April, 1902, at which time work had been performed and materials furnished by the Arnold Company to the amount of and value of $47,513.83. The contract provided that "settlement for said

work [was] to be made upon the 5th of each month for all material delivered and labor performed and other expenses incurred by the Arnold Company on the work during the previous month in cash or other payment satisfactory to the Arnold Company."    . . .

On January 9, 1901, the circuit court for Kenosha county decided, in the suit of *Allen v. Clausen,* 114 Wis. 244, 90 N. W. 181, that said ordinance No. 240 was void, and judgment was entered accordingly, from which judgment an appeal was taken to this court. On October 19, 1901, the common council of the city of Kenosha passed an ordinance amending said ordinance No. 240 by including some additional streets or portions of streets not included in the original ordinance. The amended ordinance also ratified the assignment of ordinance No. 240 to the street railway company. On October 21, 1901, *Haynes* and *Clausen* assigned their rights, if any they had, under ordinance No. 240 to B. J. Arnold, and on the same date Arnold in turn assigned such interest to the street railway company. On December 4th the bond issue was authorized by the street railway company, and upon said date the stockholders and directors of that company passed a resolution reciting the necessity for purchasing the franchise granted to *Haynes* and *Clausen,* and authorized the directors to purchase the same for such sum as they found practicable, not exceeding $50,000. The trust deed was recorded March 24, 1902. On March 25, 1902, Arnold delivered the bonds in suit to the plaintiffs, and on the trial he testified that they were delivered in payment for the assignment of the franchise granted by ordinance No. 240. On April 22, 1902, the case of *Allen v. Clausen* was decided by this court (114 Wis. 244, 90 N. W. 181), in which it was held that ordinance No. 240 was void because the grant was made to individuals instead of to a corporation. On May 5, 1902, the directors of the Kenosha Street Railway Company passed a resolution reciting that said company had never paid any-

thing on account of construction, and that none of the work, materials, construction, and equipment covered by the contract had been delivered to or accepted by the street railway company; that said company had lost its franchise by reason of the decision of the supreme court in the case of *Allen v. Clausen* and was unable to proceed, and that to save itself from greater damage it was advisable to procure the construction contract to be canceled. The resolution further recited that Mr. Arnold had offered to save the company harmless from said construction and equipment contract and from all loss, costs, damages, and payments thereunder and growing out thereof, upon payment and delivery to him of $16,000 in money and $30,000 in bonds of the company, and it was resolved that such offer be accepted and that certain bonds therein described be delivered to Mr. Arnold. The bonds described in this resolution were the identical bonds that had heretofore been delivered to Mr. Arnold and had been by him transferred and delivered to the plaintiffs in this action on March 25, 1902, and no other bonds were ever issued by the Kenosha Street Railway Company. The $16,000 provided for in the resolution was turned over to and was received by Mr. Arnold.

On June 2, 1902, the common council of the city of Kenosha passed an ordinance granting to the *Kenosha Electric Railway Company,* a Wisconsin corporation, a franchise to construct a street railway in said city. Thereafter the Arnold Electric Power Station Company proceeded to construct a street railway for the *Kenosha Electric Railway Company,* using as part of such construction the work done and materials furnished under the contract with the Kenosha Street Railway Company. The line was completed for the *Kenosha Electric Railway Company* in March, 1904. The defendant B. J. Arnold owned practically all of the capital stock of the Kenosha Street Railway Company and dominated and controlled that company. He likewise owned a ma-

jority of the capital stock of the Arnold Electric Power Station Company and dominated and controlled the affairs of that company. He also owned practically all of the capital stock of the *Kenosha Electric Railway Company* prior to the year 1906, and dominated and controlled the affairs of that company until 1906.

For the appellants there was a brief by *Wegner, Blatchley & Gilbertson,* attorneys, and *F. M. Lowes* and *Spencer Ward,* of counsel, and oral argument by *Mr. Andrew Gilbertson, Mr. A. H. Blatchley,* and *Mr. Lowes.* They contended, *inter alia,* that the plea of usury as a defense is personal to the borrower and his sureties and privies and cannot be set up by a stranger to the original transaction,—cannot be extended beyond the borrower, his sureties, heirs, devisees, and personal representatives. *Cheney v. Dunlap,* 27 Neb. 401, 5 L. R. A. 465, 467; *Sullivan Sav. Inst. v. Copeland,* 71 Iowa, 67, 32 N. W. 95; 2 Pom. Eq. Jur. 453; *Safford v. Vail,* 22 Ill. 327; *Essley v. Sloan,* 116 Ill. 391; *Sands v. Church,* 6 N. Y. 347; *Lilienthal v. Champion,* 58 Ga. 158, 162; *Union Nat. Bank v. International Bank,* 123 Ill. 510; *Bensley v. Homier,* 42 Wis. 631. The street railway corporation had power to borrow money and mortgage its property as security therefor. Sec. 1748, Stats. (1898); *Lehigh Valley C. Co. v. West Depere A. Works,* 63 Wis. 45; *Blunt v. Walker,* 11 Wis. 334; *Pierce v. M. & St. P. R. Co.* 24 Wis. 551; *Farmers' L. & T. Co. v. Fisher,* 17 Wis. 114; *Pfister v. Milwaukee E. R. Co.* 83 Wis. 86, 88; *Nat. F. & P. Works v. Oconto W. Co.* 52 Fed. 29; *Brownell v. Greenwich,* 114 N. Y. 518, 4 L. R. A. 685, 691. Either party may waive any part of a contract either expressly or by acts or declarations indicating a relinquishment of any provision or part of a provision, and without the performance of which, unless relinquished or waived, a recovery could not be had. *Mueller v. Cook,* 126 Wis. 504, 511; *McPherson v. Rockwell,* 37 Wis. 159; *Banbury & C. D. R. Co. v. Daniel,* 54 L. J. Ch. 265; *Ashland*

*L., S. & C. Co. v. Shores,* 105 Wis. 122, 132; *Goodwin v. Merrill,* 13 Wis. 658; *Clark v. Clifford,* 25 Wis. 597. A creditor treating property as belonging to the debtor and crediting proceeds on the debt is estopped to assert against the surety that the debtor was not the owner. *Thompson v. White Water Valley R. Co.* 132 U. S. 68; 20 Am. & Eng. Ency. of Law (2d ed.) 984. The vendor of railroad rails who allows them to be laid into and become an integral part of the railroad track consents thereby to their becoming subject to the lien of an outstanding mortgage upon the road, and is not entitled to be paid the purchase price in priority to the mortgage debt. *Galveston·R. Co. v. Cowdrey,* 11 Wall. 459; *Porter v. Pittsburg B. S. Co.* 122 U. S. 267; *Thompson v. White Water Valley R. Co.* 132 U. S. 68; *Coe v. Mc-Brown,* 22 Ind. 252.

*John C. Slater,* attorney, and *George Lines,* of counsel, for the respondents. They contended, *inter alia,* that the plaintiffs' bonds were void and that the delivery to *Haynes* and *Clausen* put the bonds beyond the control of the Kenosha Street Railway Company and constituted an issuing thereof within the meaning of sec. 1753, Stats. (1898). *Pfister v. Milwaukee E. R. Co.* 83 Wis. 86; *Nat. F. & P. Works v. Oconto W. Co.* 52 Fed. 29, 36. Sec. 1753, Stats. (1898), declares the public policy of this state with reference to the issue of corporate stocks and bonds. The object of the statute is to protect stockholders and *bona fide* creditors from the improvident issue of its bonds by the corporation, which might, and if allowed probably would, result in the wrecking of the corporation. *Pfister v. Milwaukee E. R. Co.* 83 Wis. 86, 88; *Clarke v. Lincoln L. Co.* 59 Wis. 655, 660; *First Avenue L. Co. v. Parker,* 111 Wis. 1. Objection under sec. 1753 can be raised by any one interested in the amount of the corporate capitalization or indebtedness. *Nat. F. & P. Works v. Oconto W. Co.* 52 Fed. 29; *First Avenue L. Co. v. Parker,* 111 Wis. 1; *Collart v. Fisk,* 38 Wis. 238. The ma-

terial furnished and labor performed remain the property of the contractor, and no title thereto passed to the railway company for which the chattel is being built until the completion and delivery thereof; and the rule is the same although advances are stipulated to be made to the builder from time to time as the work progresses.    30 Am. & Eng. Ency. of Law (2d ed.) 1217; *Haney v. Schooner Rosabelle,* 20 Wis. 247; *Galloway v. Week,* 54 Wis. 604; *Andrews v. Durant,* 11 N. Y. 35; *Gregory v. Stryker,* 2 Denio, 628; *West Jersey R. Co. v. Trenton C. W. Co.* 32 N. J. Law, 517; *Elliott v. Edwards,* 35 N. J. Law, 265; *Clarkson v. Stevens,* 106 U. S. 505.    No amendment of a void ordinance can amount to a re-enactment thereof or be of any validity or effect in itself unless the amendment is sufficient to stand as an original act of legislation without regard to the void ordinance. McQuillan, Mun. Ord. sec. 196; *Schwartz v. Oshkosh,* 55 Wis. 490; *O'Neil v. Tyler,* 3 N. Dak. 47, 53 N. W. 434; *Harvey v. A. & G. R. Co.* 186 Ill. 283; *Roche v. Knight,* 21 Wis. 324; *Wicke v. Lake,* 21 Wis. 410; *Lego v. Medley,* 79 Wis. 211. A defendant may plead as many defenses and counterclaims as he may have, even though they are based upon inconsistent legal theories.    *South Milwaukee B. H. Co. v. Harte,* 95 Wis. 592; *Gates v. Avery,* 112 Wis. 271; *Gilman v. Brown,* 115 Wis. 1; *Roberts v. Decker,* 120 Wis. 102; *J. H. Clark Co. v. Rice,* 127 Wis. 451.

The following opinion was filed January 26, 1909:

BARNES, J.    In view of the conclusion reached in this case it is unnecessary to decide whether ordinance No. 240, passed by the common council of the city of Kenosha, was re-enacted or validated by the amendment of October 19, 1901, granting certain rights and privileges to the Kenosha Street Railway Company and approving of the assignment to said railway company of the franchises and rights granted plaintiffs by said ordinance.    We will assume, without de-

ciding, that the bonds issued to B. J. Arnold on March 25, 1902, were void within the meaning of sec. 1753, Stats. (1898), for want of sufficient consideration to support them. The validity of $29,000 of the $30,000 in bonds so issued is involved in this suit.

The evidence in the case is undisputed that Mr. Arnold owned practically all of the stock of the Kenosha Street Railway Company (hereinafter called "railway company"), organized August 10, 1900, and that he absolutely dominated and controlled the affairs of such corporation. It is also undisputed that he held at least a majority of the stock in the Arnold Electric Power Station Company (hereinafter called the "construction company") and that he dominated and controlled the affairs of that company. It is likewise conclusively established that he owned practically all of the stock in the *Kenosha Electric Railway Company,* which was organized shortly after May 5, 1902, and that he also dominated and controlled the affairs of that company until he disposed of his stock therein during the year 1906.

Prior to May 5, 1902, the construction company had performed construction work, and delivered construction material in the streets, to the value of $47,513.83, under its agreement with the railway company. On April 22, 1902, this court decided the case of *Allen v. Clausen,* 114 Wis. 244, 90 N. W. 181, in which it was held that the original franchise granted the plaintiffs was void because the grantees named therein were individuals, while sec. 1862, Stats. (1898), authorized the granting of such a franchise to a corporation only. No part of the above sum had then been paid the construction company.

On May 5, 1902, the directors of the railway company met and adopted two resolutions. Mr. Arnold was present, but voted on neither. The first recited that, ordinance No. 240 having been declared void by the supreme court, it was expedient that the proposition of B. J. Arnold for the issue

of stock to him on account of the transfer of said ordinance, and the company's acceptance of such proposition, should be abrogated, the consideration therefor having wholly failed. Mr. Arnold testified on the trial that the sole consideration for the $30,000 in bonds issued and delivered to him was the assignment of said ordinance No. 240 by him to the railway company. It does not appear just what the agreement between the parties was in reference to the amount of stock he was to receive in addition to the bonds. Such stock was evidently intended to represent his profit on the purchase of the franchise from the plaintiffs, they having received the entire $30,000 in bonds in consideration of their assigning the franchise, according to Mr. Arnold's testimony. The second resolution recited the adverse decision of this court rendering the franchise void and that the company was unable to sell its bonds or provide money to make payments under the construction contract, so that it was necessary, in order to prevent greater loss, to procure the cancellation of such contract. The resolution then recited:

"Whereas, Mr. B. J. Arnold has this day offered to save this company harmless from said construction and equipment contract, and from all loss, costs, damages and payments thereunder and growing out thereof, provided and on condition that he be paid and allowed for so doing the sum of $46,000, payable $16,000 in cash and the balance of $30,000 in and by the delivery to him of thirty of the bonds of this company for one thousand dollars each, with all their coupons, matured and unmatured, attached: . . . Therefore be it and it is hereby resolved, that said proposition of said B. J. Arnold be and the same is hereby accepted and the officers of this company are directed to take all steps and perform all acts necessary to carry out said proposition and its acceptance."

The resolution further recited that "the thirty bonds to be allowed to said B. J. Arnold shall be bonds numbered 121 to 150, both inclusive." The company further assigned to Mr.

Arnold its rights in the sum of $5,000 on deposit with the city of Kenosha "on account of ordinance No. 240," and "$5,000 in the hands of Z. G. Simmons to indemnify him as bondsman." The $16,000 in cash referred to in the resolution was paid Mr. Arnold. The bonds to be turned over to him were the identical bonds delivered to him on March 25th and the consideration for which it was supposed had failed by reason of the franchise for which they were given having been declared void. As already stated, these bonds had passed out of Mr. Arnold's possession, and it is apparent that it was his intention, when the transaction of May 5th occurred, to take the necessary steps to supply the want of consideration for their issue and thus validate them.

The decision of the trial court was based on two grounds: (1) The street railway company received nothing of value on May 5th that would furnish a sufficient consideration for the bond issue at that time; and (2) the bonds in suit were issued prior to May 5th for an insufficient consideration and were therefore void, and could not be validated by the transaction of May 5th. In support of the first ground it is said that the work done and material furnished by the construction company, a substantial portion of which had been worked into the street railway line, never was the property of the railway company and never became such, and that therefore on May 5th, when the issue of bonds was voted, the company received no consideration and had no property or thing of value whatever. The following authorities are relied on to sustain such contention: 30 Am. & Eng. Ency. of Law (2d ed.) 1217; *Haney v. Schooner Rosabelle,* 20 Wis. 247; *Galloway v. Week,* 54 Wis. 604, 12 N. W. 10; *Andrews v. Durant,* 11 N. Y. 35; *Gregory v. Stryker,* 2 Denio, 628; *West Jersey R. Co. v. Trenton C. W. Co.* 32 N. J. Law, 517; *Elliott v. Edwards,* 35 N. J. Law, 265; *Clarkson v. Stevens,* 106 U. S. 505, 1 Sup. Ct. 200. If the position taken is sound, it disposes of the case for all practical purposes.

While the agreement on Arnold's part to indemnify the railway company against being called upon to pay the money due the construction company might furnish a sufficient consideration to support the validity of the bonds, yet, if there is no property on which the trust deed given to secure such bonds could operate, there is no security whatever for the payment of the bonds.

The authorities cited by the respondent do not seem to reach the situation here presented. Prior to the decision of this court in *Allen v. Clausen,* 114 Wis. 244, 90 N. W. 181, the railway company and the construction company evidently acted upon the assumption that the franchise granted by ordinance No. 240 was valid. It was the only authority which gave any color of right to tear up the streets and place tracks and erect poles therein, and it would appear from the evidence in the case that about one third of the construction work had been performed when the ordinance was declared invalid.

The construction contract is peculiar in its terms. It is silent as to title or ownership of the road as constructed or as to the ownership of the construction material as delivered on the ground. It made no provision for acceptance of the work on completion. Under its terms the street railway company was obligated to pay the actual cost of completing the line, plus fifteen per cent. to cover the work of engineering and supervision by the construction company. Settlement was required to be made on the "5th of each month for all material delivered and labor performed and other expense incurred . . . during the previous month in cash or other payment satisfactory to the said Arnold Company." If this contract had been carried out according to its terms, the construction company would be obliged to advance very little money of its own to carry on the work. The fact that the same person controlled both corporations rendered the acceptance of the work a merely formal matter. For the same

reason, perhaps, the advances to carry on the work were all made by the construction company, although it appeared that the railway company had over $19,000 in its treasury on May 5, 1902. The nature of the contract was such that it would seem that the construction company was employed by the railway company as its agent and employee to construct the line, receiving, as compensation for its services for engineering and supervision, fifteen per cent. of what the road otherwise cost.

The authorities are generally to the effect that, as to materials that are affixed to and made a part of a railroad which is subject to a mortgage, both present and future property will be subject to the lien of such mortgage in favor of *bona fide* mortgage bondholders, in superiority to any contract between the vendor of the property and the railroad company. *Galveston, H. & H. R. Co. v. Cowdrey,* 11 Wall. 459; *Porter v. Pittsburg B. S. Co.* 122 U. S. 267, 7 Sup. Ct. 1206; *Thompson v. W. W. V. R. Co.* 132 U. S. 68, 10 Sup. Ct. 29; *Coe v. McBrown,* 22 Ind. 252. The trust deed that is being foreclosed in this suit, in express terms covered after-acquired property.

Aside from the foregoing considerations, and regardless of where the title to the improvements made and the materials furnished vested prior to May 5, 1902, we think the transaction at that time was amply sufficient to vest the title to the property in question in the street railway company, if it were otherwise vested before.

Without any intent to use the appellation in an invidious sense, Mr. Arnold was a veritable Pooh Bah as far as the three corporations here involved were concerned. When he "met" with himself, they met if he so willed. His unhampered authority to dictate was questioned by no one. He was simply dealing with his own property through a corporate agency as absolutely as he might deal with it as an individual. We must look to his intent, to some extent, to determine just

which corporate entity owned the property we are dealing
with. When he made a proposition to the railway company
to save it harmless from the construction contract and also
from all "loss, costs, damages and payments thereunder or
growing out thereof" in consideration of $16,000 in cash
and $30,000 in bonds, the construction company was in fact
making the offer. He was, to all intents and purposes, the
construction company. The amount to be paid was substan-
tially the amount due the construction company. There is
no proof that he was called upon to pay any "loss, costs, or
damages" arising out of the contract, except as he might have
paid the construction company what was due it. The resolu-
tion shows that he was empowered to collect $10,000, which
had been deposited by the railway company for two different
purposes, in addition to receiving the $46,000 in bonds and
money. It does not appear how much was realized on such
claims. No claim was made upon the railway company after
May 5th for the amount then due on the construction con-
tract, presumably because Mr. Arnold had settled with the
construction company, as the arrangement entered into con-
templated he should. It never thereafter asserted that the
construction contract was not by mutual arrangement can-
celed and terminated as it was agreed it should be.

It makes very little difference whether this contract was
entire or separable. If entire, the parties had a right to
agree upon the amount due thereon and on the damages the
contractor should be entitled to receive for surrendering his
contract, if any; and on payment of such amount there was
no obstacle whatever in the way of terminating such agree-
ment. We know of no rule of law that would, in the absence
of express agreement, permit a contractor to receive pay for
what was due him on his contract and for damages he might
be entitled to for cancellation thereof, and at the same time
permit him to retain the property thus paid for. If the con-
struction company here could receive $46,000 in payment for

all sums due upon the contract and could voluntarily agree to a termination of such contract, and in addition thereto could keep the property represented by the payment, we would have an apt illustration of how it is possible to eat cake and keep it at the same time.   We think no such intention should be inferred from the acts of the parties, and certainly no such intent is expressed.

The obvious reply to this reasoning is that the arrangement was made between the railway company and Arnold as an individual, and that the agreement should not be treated as though made with the construction company.   Neither the street railway company nor the construction company is here repudiating Arnold's authority to act for the construction company; nor are they combating the proposition that he did so act.   This is a proceeding in a court of equity, that looks to substance rather than to form.   Mr. Arnold testified, and his testimony is undisputed, that the construction company was an Illinois corporation "owned and controlled" by him. In view of this fact, which is a verity in the case, the rational conclusion to draw is that the arrangement of May 5th was, in legal effect, made between the two corporations.   As to the effect of permitting Arnold to deal with these corporations in the manner in which he did, the following cases support the view that his acts were binding upon the corporation he assumed to act for: *St. Clair v. Rutledge,* 115 Wis. 583, 92 N. W. 234; *Northwestern F. Co. v. Lee,* 102 Wis. 426, 78 N. W. 584; *First Nat. Bank v. G. V. B. Min. Co.* 89 Fed. 439; *Quee D. Co. v. Plaut,* 55 App. Div. 87, 67 N. Y. Supp. 10; *Fitzgerald & M. C. Co. v. Fitzgerald,* 137 U. S. 98, 109, 11 Sup. Ct. 36; *Chambers v. Lancaster,* 160 N. Y. 342, 54 N. E. 707; *Nat. State Bank v. Sanford T. & T. Co.* 157 Ind. 10, 60 N. E. 699; *McComb v. Barcelona A. Asso.* 134 N. Y. 598, 608, 31 N. E. 613; *Preston Nat. Bank v. G. T. Smith M. P. Co.* 84 Mich. 364, 47 N. W. 502; *Sherman Center T. Co. v. Morris,* 43 Kan. 282, 23 Pac. 569.

From what has been said it is apparent that there was an ample consideration to support an issue of bonds to the amount of $30,000, aside from the consideration that would follow because of the payment of the debt, unless the lack of a franchise rendered the property worthless. We do not think the lack of a franchise deprived the construction work of value, and it certainly did not destroy the value of material placed upon the ground and not actually wrought into the construction. The city of Kenosha was evidently desirous that a street railway system should be installed. It granted the original franchise over the mayor's veto. It afterwards granted additions to the franchise and ratified the assignment thereof to the street railway company. The *Kenosha Electric Railway Company* was organized in May, 1902, and almost immediately secured a franchise not materially different from that originally granted. This corporation was dominated and controlled by Mr. Arnold to the same extent that the former company had been, and no doubt the new franchise would have been granted to the former company if the proper request had been made upon the city council.

It is argued, however, that if it be assumed that the railway company might have legally issued bonds to the amount of $30,000 it did not do so; that in effect it attempted to validate bonds to that amount which were already issued and delivered to Mr. Arnold; that such bonds were void for want of consideration, and, having passed out of Arnold's control, they were void for all purposes and could not be made valid obligations by supplying a new and sufficient consideration. To state the proposition in another way, it amounts to saying that, though the holders of the bonds might have surrendered them and taken other valid bonds in the same amount in their stead, yet the failure so to do has left them with worthless paper in their hands. Here again the question of substance rather than of form is involved. If the law pronounces the bonds void, however, it is just as much the duty of a court of

equity to obey its mandate as it would be the duty of a court of law to do so.

Sec. 1753, Stats. (1898), provides that:

"No corporation shall issue any stock or certificate of stock except in consideration of money or labor or property, estimated at its true money value, actually received by it, equal to the par value thereof, nor any bonds or other evidence of indebtedness except for money, labor or property estimated at its true money value actually received by it, equal to seventy-five per cent. of the par value thereof, and all stocks and bonds issued contrary to the provisions of this section and all fictitious increase of the capital stock of any corporation shall be void."

It will be observed that this section treats of corporate bonds and stocks. In the case of stock it is void unless issued in consideration of money or its equivalent to the amount of the par value of the stock. In the case of a bond it is void unless issued in consideration of money or its equivalent to the extent of seventy-five per cent. of its par value. It is very obvious that the lawmaking power did not use the word "void" in this statute, as applied to stock, in the sense that stock once issued in violation of its provisions could not be validated by paying a full consideration therefor. Secs. 1751, 1754, 1756, Stats. (1898), wherein provision is made for collecting the difference between the amount paid and the face value of stock issued, negative any such construction.

It is difficult to imagine any greater infirmity in the stock of a corporation than would result from overissue. Such stock is wholly void. But it seems that overissued or spurious stock may be legalized by a subsequent legal increase of the capital stock of the corporation. *In re New Zealand B. Corp.* L. R. 3 Ch. App. 131; 1 Cook, Corp. § 292. And it is held that where spurious stock is issued, if there is an after surrender of an equal amount of valid shares, made for the purpose of validating the spurious shares, they thereby become valid. *Perin v. C., N. O. & T. P. R. Co.* 18 Weekly

Law Bul. 382; *Cincinnati, N. O. & T. P. R. Co. v. Citizens' Nat. Bank,* 24 Weekly Law Bul. 198.  Judge TAFT participated in the first of these decisions and wrote the second. See further collation of cases under sec. 766, 3 Cook, Corp. (5th ed.) 2016 *et seq.*

It is difficult to see why the word "void" in sec. 1753 means one thing when applied to stock and something different when applied to bonds.  And if stock, void because the statutory requirement as to consideration has not been complied with, can thereafter be validated without surrender and without reissue, by supplying such consideration, no good reason is apparent why the same rule should not apply in the case of bonds.

The New York statute inhibits the issue of bonds "for less than the fair market value thereof."  Where bonds to the amount of $10,500 were pledged to secure an indebtedness of $6,415 and in contemplation of further loans being made, with an agreement that the pledgor might sell the bonds at face and pay the loan with the proceeds, and loans were thereafter made to the face value of the bonds, it was held by the United States circuit court of appeals that the bonds were lawfully issued within the meaning of the statute. *In re Waterloo O. Co.* 134 Fed. 345.  The validity of the bonds was not sustained on the ground that the $6,415 represented their "fair market value," but because the bank actually advanced money thereon to the amount of their face value.

Sec. 1753 does not in terms provide that the payment of the consideration must be contemporaneous with the issue of the bonds.  In this case, in the first instance, a supposedly valid consideration was given by the party to whom the bonds were issued.  He transferred them to third parties.  Six weeks later, when it transpired that the consideration had failed, or the parties so supposed, he substituted other and sufficient consideration therefor.  We conclude that the issue

of the bonds was validated by the payment of such consideration. Having reached such conclusion, it is unnecessary to consider the application of sec. 1753, Stats. (1898), to *bona fide* holders of bonds received in due course of business, or whether the plaintiffs are holders in due course, and neither is it necessary to discuss numerous other questions argued by appellants.

Our conclusions are: (1) That the construction work done and the material furnished and delivered under the construction contract became and were the property of the Kenosha Street Railway Company from and after May 5, 1902; (2) that the lien of the trust deed sought to be foreclosed in this action attached to such property and is now a valid, outstanding, and subsisting lien against the same; (3) that such lien, as to such portions of said railroad as had been wholly or partially constructed prior to May 5, 1902, is prior and paramount to any right, claim, or interest of the *Kenosha Electric Railway Company* in or to such portions of said railroad; (4) that the plaintiffs are entitled to the usual judgment of foreclosure and sale in this action.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for further proceedings according to law.

Upon a motion for a rehearing there was a brief by *Wegner, Blatchley & Gilbertson,* attorneys, and *F. M. Lowes* and *Spencer Ward,* of counsel, for the appellants, and a brief by *Quarles, Spence & Quarles,* of counsel for the respondent.

The following opinion was filed May 11, 1909:

BARNES, J.   A motion for a rehearing is filed in this case, in which the court is asked to be more specific in its designation of the property which is to be subjected to the lien of the mortgage sought to be foreclosed.

The practical difficulty in making a severance of the prop-

erty now operated by the *Kenosha Electric Railway Company* seems almost insurmountable, and if severance were made the plaintiffs might receive very little on a sale of the property. Besides, the interest of the public in having street-car service maintained is important and should not be overlooked. On the other hand, it did not seem to be equitable to the defendant, the *Kenosha Electric Railway Company,* under the circumstances, to declare the mortgage a lien on its entire road, regardless of the value to it of the work done and materials supplied by the former company. This being a proceeding in a court of equity, it is within the power of the court to dispose of the case on equitable considerations.

The former mandate is modified in the following particulars: The circuit court is directed to ascertain the fair and reasonable value to the *Kenosha Electric Railway Company* of the work done and materials furnished by the Kenosha Street Railway Company and the Arnold Electric Power Station Company, the benefit of which was used and appropriated by said *Kenosha Electric Railway Company.* Said circuit court is further directed to declare the indebtedness found to be due said plaintiffs upon the bonds and mortgage sued upon a lien upon the real property of the *Kenosha Electric Railway Company,* to the amount of the value so found and no more, which lien shall be prior to any lien originating against said property subsequent to the recording of the mortgage sought to be foreclosed in this action, and to satisfy which a sale of the property should be ordered and directed. If it is essential to bring in other necessary parties so that they may be concluded by the judgment, the court will make the necessary order requiring such parties to be made defendants in the action.

*By the Court.*—It is so ordered.

WINSLOW, C. J., took no part.